## 33180. HALL v. GARMON.

DECIDED JANUARY 27, 1951. REHEARING DENIED FEBRUARY 9, 1951.

*Frank Grizzard, Frank A. Bowers,* for plaintiff in error.
*James R. Venable, Hubert C. Morgan, J. L. Respess Jr., Walter R. Brown,* contra.

WORRILL, J. Carl Garmon, doing business as Garmon Motors, sued C. M. Hall, doing business as Hall Motors, and Jesse T. Garmon for damages for breach of an express warranty of title to a certain automobile, allegedly sold by Jesse T. Garmon as the agent of Hall Motors to the plaintiff. Upon the trial of the case it was stipulated that title to the automobile in question had failed and that Carl Garmon, the plaintiff, had had to reimburse the person who purchased it from him.

The plaintiff testified that he had had occasion to do business with the defendant Motor Company, buying and selling automobiles for a long period of time prior to the purchase of the

automobile in question; that he had done business with Jesse Garmon as Hall's agent; that in July 1948, Jesse Garmon came to his place with a Mr. Autry offering to sell a 1948 Ford automobile; that the defendant, Garmon said that they, the defendants, were trying to sell some automobile and "skip title", that the income tax people were after them and that they did not want to run their bank account up by taking too many checks; that he wanted the plaintiff to make the check given in payment for the automobile payable to Autry; that the plaintiff told the defendant he would buy the automobile and gave Autry a check payable to him for $1800 and gave Jesse Garmon $150 in cash; that he didn't take any receipt from Jesse Garmon for the cash; that Jesse Garmon told him that Hall Motors was giving him title "just like we have before"; that plaintiff thought he was buying the automobile from Hall Motors, and made the check payable to Autry because that was the way Jesse Garmon told him to make it; that he had no conversation with Bobo, Hall's bookkeeper, about the automobile in question before he bought it; that he didn't inquire of Autry where he got the automobile before he bought it because the defendant, Jesse Garmon, told him that Hall Motor Company was taking care of that. Dean W. Waters, a witness for the plaintiff, substantiated the plaintiff's testimony in regard to the manner of payment of the purchase price for the automobile, saying that he was present on the lot when the transaction took place and saw the money and check change hands, and that his signature appears on the bill of sale from the defendant to the plaintiff as a witness.

Jesse T. Garmon, one of the defendants, being called by the plaintiff for cross-examination testified that during 1948 he was employed by Hall Motors as a salesman; that as such he executed bills of sale in a number of cases; that he had sold cars to his brother, Carl Garmon for Hall Motors; that he first met Autry at Hall's place of business; that he had been asked by Hall when cars came in that they did not want, to shop them and sell them, that is if he could make anything on them; that any money he made in shopping such cars and selling them was turned in to the company; that he remembered the occasion of carrying Mr. Autry down to his brother's lot; that when

the plaintiff bought the automobile he gave Autry $1800 and Autry paid him (the witness) $50, not $150; that his brother did not give him any money; that there wasn't any transaction between him and the plaintiff; that he did not buy the automobile from Autry and sell it to the plaintiff; that Autry sold it to the plaintiff and signed the bill of sale himself; that Autry signed the bill of sale and that he signed his name under Autry's and that the one exhibited to him (plaintiff's exhibit "A") was not the one given on this occasion; that the plaintiff called two or three places checking on Autry to see if he was all right.

Later this defendant testified on direct examination on his own behalf that the defendant Hall was not present when Autry brought the automobile in, but that Hall had given him general instructions that when any automobiles were brought in that they did not want, he could take the man out and help him dispose of it for a "bird dog fee"; that in this case he received a $50 cash fee from Autry, which he turned in to Hall Motor Company and that was the "bird dog fee" he got for himself; that the plaintiff paid him nothing; that at the time he was acting in the line of duty for Hall Motor Company. This defendant also testified that he had signed a number of bills of sale in blank for his brother and that though the bill of sale exhibited to him was signed by him, and that that was his signature on the piece of paper, that on the one involving the automobile here in question, Paul Autry signed his name also and that he signed under it.

The plaintiff introduced in evidence the bill of sale purporting to convey the automobile in question and containing a warranty of title and signed "Hall Motors, J. T. Garmon."

E. O. Bobo sworn as a witness on behalf of the defendant testified that he was employed by the defendant, Hall Motors as bookkeeper at the time this transaction took place and that he remembered Autry bringing the automobile to Hall's lot; that he had no conversation with the plaintiff about this particular automobile, but that he had other conversations with him on numerous occasions and that he had told the plaintiff that Hall would not be responsible for automobiles except where the bills of sale were issued from Hall Motors by himself or by Mr. Hall; that no money was received there as a result of the sale

of this particular automobile on July 17, 1948; that Hall did not buy the automobile because Autry did not have sufficient evidence to prove that he was the owner of it; that the next he heard about the car was when the plaintiff called and demanded reimbursement for his loss; that Jesse Garmon worked for Hall and that he would go out and "shop" these automobiles to see if he could make a "bird dog fee" out of them; that Hall was not present when this car was brought in and had nothing to do with Jesse Garmon shopping it; that on the bill of sale involved here, he did not recognize Jesse Garmon's signature inasmuch as he usually signed his name "Jesse T. Garmon" and not merely "J. T. Garmon"; that when Hall gives a bill of sale they have their own form they use and that the form here used was one of Carl Garmon's forms.

The jury returned a verdict for the plaintiff for $1950, the amount sued for and judgment was entered thereon. The plaintiff made a motion for a new trial on the general grounds which was amended by the addition of one special ground, and the exception here is to the order overruling that motion.

The single special ground of the motion for a new trial complains of an excerpt from the charge of the court in which the judge charged substantially that the defendant, Jesse T. Garmon, in executing the bill of sale to the automobile in question was either acting as an agent and employee of the defendant Hall, in which case Hall would be liable to the plaintiff for the loss sustained, or that if Garmon, in so executing the bill of sale exceeded his authority as Hall's agent, and acted for himself, then he would be personally liable to the plaintiff; that both could not be liable; but that one or the other would be liable to the plaintiff for the loss he sustained. The objection to this portion of the charge was that it amounted to the direction of the verdict for the plaintiff, which excluded from the jury's consideration the question of whether or not Jesse T. Garmon was acting as an agent of Paul E. Autry. In overruling the motion for new trial, the court said: "The plaintiff's suit declares upon a certain bill of sale attached to the plaintiff's petition as Exhibit A. The defendant, Jesse T. Garmon, after having been served with copy of the petition and the exhibit declared upon, failed to file a plea of non est factum. Therefore, Jesse T. Garmon's testimony that the bill of sale

declared upon was not the bill of sale covering the transaction but that another and different bill of sale in which Autry joined as vendor, was the instrument delivered at the time of the sale, is immaterial and has no probative value in view of the failure to file a plea specifically raising that issue."

It is clear that it was the trial judge's purpose to direct the verdict for the plaintiff and against one or the other of the defendants, for in the final paragraph of the charge, though this is not excepted to, the court said: "In other words, gentlemen, you are to find a verdict in favor of the plaintiff, but against only one of the defendants, and it will be necessary that you recite in your verdict which defendant you find against."

While Jesse T. Garmon may have been estopped to deny his signature on the bill of sale after he failed to file a timely plea of non est factum (and in fact he did not deny his signature), nevertheless, we do not think that Hall was precluded by his failure to file such plea from asserting that Jesse T. Garmon, in signing such bill of sale, exceeded his authority or from maintaining that in so doing, he did so as Autry's agent and not his. The charge of the court expressly excluded the jury from so finding and we think that this was error requiring the grant of a new trial.

Furthermore, another phase of the evidence clearly raised the inference that the plaintiff dealt directly with Autry; that he looked to Autry for a good title to the automobile and even went to the trouble to call long distance on the telephone to check up on Autry to see if he was all right; that Jesse T. Garmon's connection with the deal was merely that of a friendly intermediary, that he merely brought Autry and the plaintiff together as a personal favor to one or both of them, and that he received for his trouble a $50 fee from Autry after the sale had been consummated between the plaintiff and Autry by direct dealing. This charge likewise excluded from the jury's consideration the question of whether or not these were the facts of the case. For these reasons, the trial court erred in so charging and in thereafter overruling the motion for a new trial complaining of such charge.

*Judgment reversed. Sutton, C.J., concurs. Felton, J., concurs in the judgment.*